1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MICHAEL D. NUNLEY,

11              Petitioner,              No. CIV S-11-0607 KJM EFB P

12        vs.

13   M. D. McDONALD,

14              Respondent.         FINDINGS AND RECOMMENDATIONS

15   _____/

16        Petitioner is a state prisoner without counsel seeking an application for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2009 judgment of conviction

18   entered against him in the Butte County Superior Court on charges of forcible rape, sexual

19   battery, failure to register as a sex offender, and escape while felony charges were pending.[1]  He

20   seeks habeas relief on the grounds that: (1) his trial counsel rendered ineffective assistance, and

21   (2) the trial court violated his constitutional rights when it ordered his prior counsel to testify

22   against him at trial.  Upon careful consideration of the record and the applicable law, the

23   undersigned recommends that petitioner's application for habeas corpus relief be denied.

24   ////

25   _____

26        [1] Petitioner's conviction for rape of an incompetent person was reversed on appeal.
     Resp.'s Lodg. Doc. No. 5.

I.      **Factual and Procedural Background**[2]

A jury found defendant Michael Dean Nunley II guilty of rape of an incompetent person, forcible rape, sexual battery, failure to register as a sex offender, and escape while felony charges are pending.  The trial court found that he had a prior strike conviction.  Defendant was sentenced to state prison for 26 years 8 months.  Sentence on the rape of an incompetent person was stayed pursuant to Penal Code[3] section 654.

The recent amendments to section 4019 do not operate to modify defendant's entitlement to credit, as he was committed for a violent felony.  (§§ 667.5, subd. (c)(3), 4019, subds. (b), (c); Stats.2009, 3d Ex.Sess., ch. 28, § 50.)

On appeal, defendant contends: (1) the trial court committed evidentiary error and his trial counsel rendered ineffective assistance when the court ordered his former attorney to testify against him during the prosecution rebuttal case; and (2) he was improperly convicted of two counts arising from a single act of intercourse; thus, either the rape of an incompetent person or the forcible rape charge must be reversed.  The People concede the latter point.  We shall reverse the rape of an incompetent person charge and affirm the judgment in all other respects.

**FACTUAL AND PROCEDURAL BACKGROUND**

* * *

**Rape And Sexual Battery Charges**

The victim in these charges was A.F. who was 25 years old at the time of trial.  She resided in an apartment in Chico.  A. F.'s living expenses were paid by her payee, Morag Shanks.  A.F. does not have a driver's license.  She is aware of what sex is and has had consensual sex with a former boyfriend.

A clinical psychologist examined A.F. in April 2002.  He determined that she had a verbal IQ of 69, a performance score of 55, and a vocabulary score of 3.  The last score placed A.F. in the bottom one percentile for her age group.  On the Peabody picture test, A.F. scored similar to a six-year-seven-month-old child.  A.F. recognized that she has a "learning disability" because, as she

---

[2]  In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary.

[3]  Further undesignated statutory references are to the Penal Code unless otherwise indicated.

2

explained, "when I was seven years old, I got ran over by a car and ran over half of my brain."

On July 6, 2008, A.F. went to her friend Jenny's house. She was planning to spend the night in Oroville at the house of Jenny's uncle, Jason "Jake" Valentine. Later, at Valentine's house, A.F. met defendant, who asked A.F. and Jenny to clean his motor home. Thereafter, defendant, Valentine, Jenny, A. F., and her ex-boyfriend, Ted, all went to defendant's motor home in Gridley. A .F. and Jenny cleaned the residence while the men sat outside and talked.

Later, back at Valentine's house, Ted and Valentine got into an argument. Ted left in a huff, and Valentine told A.F. that she could not spend the night at his house. Jenny attempted to telephone her father (Valentine's brother) to see if A.F. could spend the night at his house. Defendant then asked A.F. if she wanted a ride. After A.F. indicated that she did not know defendant, he told her it would be okay and she got into his car.

Defendant drove A.F. back to his motor home. Along the way, she told him to take her to Jenny's house or to Ted's house, but he said, "no" and drove to Gridley. At his motor home, defendant told A.F. that she could sleep in his bed and that he would not bother her. Without removing her clothes or glasses, she lay down on the bed and pulled the sheet over her.

Defendant entered the room, pulled off the sheet, held A. F.'s hands to her side, lifted up her shirt, put his mouth on her breasts, pulled down her shorts and underwear, and placed his penis in her vagina. The penetration was painful and she was scared. He moved his body up and down on top of her. She told him to stop and said that she would tell her boyfriend and call the police.

Defendant then offered A.F. $50 for having sold her body. After protesting that she did not do that sort of thing, she told him to take her to the residence of an ex-boyfriend, Mike. Defendant told her not to tell anyone what he had done or he would "do something else" to her. Around 3:00 a.m., defendant dropped off A.F. at Mike's house where she fell asleep on the couch. When she awoke she called the police. A.F. identified defendant at trial as the person who had raped her.

A registered nurse examined A.F. at Oroville Hospital. Her vagina had bruising, redness, and discoloration. There were also some "heavy vaginal white secretions." A. F.'s cervix showed redness and was oozing blood. The nurse took swabs of A. F.'s breasts. Later that day, the nurse examined defendant. She determined that he had visible genital warts.

///

3

Butte County Sheriff's Deputy Robert Allen spoke with defendant at his motor home in Gridley. Defendant said that "he'd been residing at [the Gridley address] for approximately three weeks on and off."

Defendant was arrested and booked into jail.  He gave a police interview that was played for the jury.  Defendant told Detective Tom Dryden that while he was at Valentine's house, he offered to pay Jenny to clean his motor home.  Later, Valentine got mad at Jenny and told her to leave his house.  Jenny obtained permission from her father to have A.F. stay at their residence.  Valentine asked defendant to drive A.F. to Jenny's residence, and he agreed.  However, defendant could not find Jenny's residence, so he dropped off A.F. at some apartments by the fire department.  Defendant claimed that he did not have sex with A.F.  In fact, he claimed he "can't have sex," evidently due to his genital warts.

DNA test results later revealed that defendant's genetic profile was on the swabs taken from A. F.'s breasts.

At trial defendant testified that he asked a friend's niece (Jenny) and her friend (A.F.) to clean his motor home in Gridley.  While the women were cleaning the motor home, A. F.'s boyfriend Ted "grabbed Jenny on the butt."  Thereafter, Jenny told A.F. what Ted had done.  A few minutes later, A.F. stood in front of defendant and allowed him to lick both of her breasts.

In rebuttal testimony, Detective Dryden said during his interview in July 2008, defendant never mentioned that A.F. had given him permission to touch or suck on her breasts.  Dryden asked defendant seven times whether he had touched A.F.  On a number of occasions, defendant said he never had sex with her.  At least once or twice, he said that he had never touched her.

A.F. testified that she did not see or hear anything about Ted touching Jenny's butt.  She also did not give defendant permission to touch or suck on her breasts.

Defendant's former counsel, Danny Brace, testified that it is his practice to share criminal discovery with his clients.  In December 2008, Brace shared some DNA evidence with defendant.

Resp.'s Lodg. Doc. No. 5 (hereinafter Opinion), at 1-6.

II.   **Analysis**

    **A. Standards for a Writ of Habeas Corpus**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28

U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision.  *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360

5

1   F.3d 997, 1002 (9th Cir. 2004).[4]  In this regard, a federal habeas court "may not issue the writ

2   simply because that court concludes in its independent judgment that the relevant state-court

3   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

4   application must also be unreasonable." *Williams*, 529 U.S. at 412.  *See also Schriro v.*

5   *Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal

6   habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

7   the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

8   precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

9   of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786

10  (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a

11  condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

12  state court's ruling on the claim being presented in federal court was so lacking in justification

13  that there was an error well understood and comprehended in existing law beyond any possibility

14  for fairminded disagreement." *Harrington*,131 S. Ct. at 786-87.

15      If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

16  court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

17  527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

18  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

19  2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

20  considering de novo the constitutional issues raised.").

21      The court looks to the last reasoned state court decision as the basis for the state court

22  judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

23  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

24  _____

25      [4] Under § 2254(d)(2), a state court decision based on a factual determination is not to be
    overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
    presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,

26  384 F.3d 628, 638 (9th Cir. 2004)).

previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id*. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003).

## B. Petitioner's Claims

All of the claims petitioner raises in the instant petition involve the trial court's admission into evidence of the testimony of petitioner's former trial counsel, Danny Brace. Petitioner argues that the admission of this testimony violated his "Sixth Amendment right to privileged attorney-client communication." Dckt. 1 at 4. He also claims that, to the extent his trial counsel failed to make a timely objection to Brace's testimony on grounds of attorney-client privilege, he received ineffective assistance of counsel. *Id.* Petitioner argues that the admission

7

1  of this evidence was unduly prejudicial and that his convictions for forcible rape, sexual battery,

2  and failure to register as a sex offender should be reversed.  *Id.* at 7.

3          The California Court of Appeal described the background to petitioner's claims, and its

4  ruling thereon, as follows:

5          **Testimony Of Defendant's Former Attorney**

6          Defendant contends the trial court committed evidentiary error,
           and his trial counsel rendered ineffective assistance, when the
7          court ordered Brace, his former counsel, to testify against him
           during the prosecution's rebuttal case.  Defendant argues the error
8          and ineffective assistance collectively destroyed his credibility
           with the jury and all counts must be reversed.  We are not
9          persuaded.

10         During his July 2008 interview with Detective Dryden, defendant
           never mentioned that A.F. had given him permission to touch or
11         suck on her breasts.  He said once or twice that he had never
           touched her.

12
           DNA test results later revealed that defendant's genetic profile was
13         on the swabs taken from A. F.'s breasts.

14         On direct examination, defendant testified that after A. F.'s
           boyfriend, Ted, grabbed Jenny's butt, A.F. stood in front of
15         defendant and allowed him to lick both of her breasts.  The
           following cross-examination then took place:
16
           "Q. [BY THE PROSECUTOR]: [A.F.] didn't let you fondle her
17         breasts, did she?

18         "A. Yes, she did.

19         "Q. You didn't even come up with that story until after the DNA
           [evidence] came back on December 3rd, 2008, did you?
20
           "A. No, I did not-came up when I had my other lawyer.
21
           "Q. Didn't you say that you never touched her at all?
22
           "A. No.  They said I raped her.  No, I did not."
23
           Later, the cross-examination continued:
24
           "Q. Well, did you get a copy of the DNA report?
25
           "A. No.
26

8

"Q. Did your attorney tell you that there was a copy of a DNA report?

"A. No.

"Q. Did your last attorney tell you that the DNA swabs came back identifying that your saliva was found on [A. F.'s] breast?

"A. No, they [sic] did not.

"Q. He never told you that?

"A. No."

Following defendant's testimony, the prosecutor told the court that she intended to call defendant's former attorney, Brace, to testify that he told defendant about the DNA results.  The court later held an Evidence Code section 402 hearing outside the jury's presence.

Defendant's trial counsel objected to calling a former attorney to the stand.  The court overruled the objection because defendant "took the stand on his own behalf" after being "advised of his right not to do so."  "[T]here was an allegation that his defense was recently fabricated.  And that the fabrication occurred after he had been advised of the results of DNA tests showing that the saliva . . . sample taken from . . . [A. F.'s] breast was . . . [defendant]'s.  [¶] And therefore, he opened the door as to the limited area whether or not Mr. Brace advised him.  Because, he denied he advised him of the results of that test either in writing or orally."  (Italics added.)

When Brace was asked if he shared the DNA results with defendant in December 2008, Brace asserted the attorney-client privilege.  The court ruled that defendant, the holder of the privilege, had waived the privilege as to that one answer by testifying that Brace had not provided him the DNA evidence.  Brace answered that in December 2008, he and defendant had discussed the DNA results.

In front of the jury, Brace testified that he represented defendant in this case prior to the end of January 2009.  Brace testified that in December 2008, he shared DNA evidence with defendant.

Defendant contends the trial court erred when it ruled that he had waived his attorney-client privilege on the specific question of whether he and Brace had discussed the DNA results by testifying that they had not discussed those results.  The point has no merit.

The trial court's rulings on the admissibility of evidence are reviewed for abuse of discretion. (*People v. Riggs* (2008) 44 Cal.4th 248, 290; *People v. Thornton* (2007) 41 Cal.4th 391, 444-445.)  This includes an evidentiary objection based on a claim

of privilege.  (*Deary v. Superior Court* (2001) 87 Cal.App.4th 1072, 1077, 1081.)

Evidence Code section 912, subdivision (a), provides in relevant part: "Except as otherwise provided in this section, the right of any person to claim a privilege provided by Section 954 (lawyer-client privilege) . . . is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone.  Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege."  (Italics added.)

In this case, defendant testified on cross-examination that Brace: (1) did not tell him that there was a copy of a DNA report; and (2) did not tell him that the DNA swabs revealed that his saliva was found on A. F.'s breasts.[5]

Defendant, the holder of the privilege as to his conversation with Brace, had the legal standing and opportunity to claim the privilege in response to the prosecutor's questions.  He did not do so and instead provided the answers set forth above.

Nothing in the record suggests that defendant's answers were accidental or inadvertent.  (See *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644, 654 [waiver under Evid.Code, § 912 does not include accidental, inadvertent disclosure of privileged information by an attorney].)  Objecting to the questions, or failing to answer them, would have invited the jury to speculate that Brace had provided the information.

Under Evidence Code section 912, subdivision (a), defendant's failure to claim the privilege manifests his consent to disclosure of that portion of the conversation.[6]  The trial court's finding that defendant had waived the privilege was not an abuse of discretion.

---

[5]  During discussion of whether attorney Brace could testify, the prosecutor described defendant's testimony set forth above as "a bold-face lie."  In his opening brief, defendant "wonders" how the prosecutor "could be so absolutely certain" that defendant had lied, unless she had already questioned Brace and he had answered her notwithstanding the attorney-client privilege.  In his reply brief, defendant chides the People for failing to respond to the issue.  We decline to deduce from the silent record either that Brace had breached the privilege or that the prosecutor had engaged in anything more nefarious than overly puffing her argument.

[6]  Because the statutory waiver consists of defendant's failure to claim the privilege, it does not matter whether his ensuing testimony affirmatively disclosed privileged matters or, as here, denied that the matters had been discussed.

(*People v. Thornton*, *supra*, 41 Cal.4th at pp. 444-445; *Deary v. Superior Court, supra*, 87 Cal.App.4th at pp. 1077, 1081.) Defendant's statutory waiver in the trial court forfeits his appellate claim of improper admission of evidence.  (*People v. Wilson* (2005) 36 Cal.4th 309, 336.)

It is not necessary to consider defendant's argument that he had not previously waived the privilege during the colloquy on when he had "come up with the story" of A.F. allowing him to fondle her breasts.  Even if he had not waived the privilege at that point, he did so during the exchange that followed.

Defendant's reliance on *Mitchell v. Superior Court* (1984) 37 Cal.3d 591 is misplaced.  As noted, Evidence Code section 912, subdivision (a), provides that the privilege is waived either: (1) when the holder has disclosed a significant part of the communication; or (2) when the holder has consented to disclosure, which may be manifested by " failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege." (Italics added .)

Mitchell involved the first form of waiver, whereas the present case involves the second form.  (*Mitchell v. Superior Court, supra*, 37 Cal.3d at p. 601.)  As we have explained, defendant failed to claim the privilege in a proceeding where he had the legal standing and opportunity to do so.  Whether he also disclosed a significant portion of the communication is not relevant to our analysis.

This leaves defendant's claim that his trial counsel's failure to assert the attorney-client privilege was ineffective and prejudicial. This claim has no merit.

"[A] conviction will not be reversed based on a claim of ineffective assistance of counsel unless the defendant establishes both of the following: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, a determination more favorable to defendant would have resulted. [Citations.]  If the defendant makes an insufficient showing on either one of these components, the ineffective assistance claim fails.  Moreover, ' "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." ' "(*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126.)

In this case, there is no reasonable probability of a more favorable determination but for counsel's failure to assert the attorney-client privilege.  We agree with defendant that the sex counts presented a credibility contest between himself and A.F.  However, A. F.'s credibility was bolstered by the fact that she never wavered from her assertion that defendant held her down and raped her.  The

physical evidence, even apart from the DNA swabs, further corroborated her testimony.

Conversely, the great blow to defendant's credibility came not from attorney Brace but from defendant himself, who first told the police that he had not touched A.F. and then told the jury that she had let him lick both of her breasts.  Even if the rebuttal had not mentioned the DNA evidence, defendant's contradictory statements – and the facial absurdity of the notion that A.F. retaliated against her boyfriend's transgression by having defendant lick her breasts – would have utterly destroyed defendant's credibility.  Any ineffective assistance could not have been prejudicial.  (*People v. Rodrigues, supra*, 8 Cal.4th at p. 1126.)

Opinion at 6-13.

Petitioner explains that he is raising a "four-prong[ed]" challenge to the trial court's decision to allow attorney Brace to testify. Dckt. 1 at 4.  He first argues that the trial court erred in allowing Brace's testimony because the testimony concerned "previous confidential conversations with petitioner."  *Id.*  Petitioner states that he did not intend to, and did not in fact, waive the attorney-client privilege during his trial testimony, and that the state trial and appellate courts erred in ruling that he did.  *Id.* at 9, 10-11; Traverse at 8, 10-11.  He argues, "it is without question that the trial court erred in ruling that petitioner had in fact waived the attorney-client privilege when in fact his previous attorney had already violated the very same privilege by disclosing privileged communication to the very same person who was in fact prosecuting petitioner."  Traverse at 8.  Petitioner claims that the admission into evidence of Brace's testimony "violated petitioner's Sixth Amendment right to counsel (attorney-client privilege) and clearly affected his credibility with the jury based on federal provisions regarding 'fundamental fairness' and a 'serious miscarriage of justice,' (prejudicial effect on jury)."  Dckt. 1 at 11.

Second, petitioner alleges that his trial counsel rendered ineffective assistance in failing to raise a timely objection based on the attorney-client privilege or to prevent, by other means, Brace's testimony from coming before the jury.  *Id.* at 4, 7, 11-13.  Petitioner also argues that if the jury had been informed that Brace had improperly violated the attorney-client privilege by

1    telling the prosecutor that he and petitioner had discussed the DNA evidence, "his claims of

2    consent with the victim stood a far greater chance of success."  *Id.* at 13.  Petitioner summarizes,

3    "if trial counsel's failure to timely object (coupled with the other errors) was what waived the

4    privilege, counsel's conduct was ineffective."  *Id.* at 14.

5         Third, petitioner argues that the trial court's evidentiary error and his trial counsel's

6    ineffective assistance "prejudiced petitioner's convictions on Counts One, Two, Five and Six.

7    *Id.* at 7.  Petitioner argues that the trial was essentially a credibility contest between him and

8    A.F.; therefore "anything which impeached petitioner's credibility unfairly, prejudiced the

9    defense case."  *Id.* at 14.  He argues that the jury verdict was the "direct result" of "petitioner's

10   own former attorney testifying against him in front of a jury (testifying that petitioner had lied)."

11   *Id.* at 15.  In the traverse, petitioner argues that "the impact of a former attorney testifying

12   against any former client, in any fashion, would surely have a major impact on any jury, wherein

13   as here, petitioner's credibility was the sole factor as to guilt or innocence on counts 1, 2, 5 and

14   6."  Traverse at 15.

15        Finally, petitioner argues that his claims were "not resolved . . . in accordance with

16   Federal and State law on state appellate review."  Dckt. No. 1 at 7.  He challenges the California

17   Court of Appeal's refusal to assume from the circumstances that Brace breached the attorney-

18   client privilege by divulging to the prosecutor his conversation with petitioner about the DNA

19   test results.  *Id.* at 9.  *See also* Opinion at 10 n.2.  Petitioner states that his "whole direct appeal"

20   was based on his contention that Attorney Brace improperly waived the attorney-client privilege

21   before petitioner had a chance to preserve it.  Dckt. 1 at 16.  Similarly, in the traverse, petitioner

22   explains that his "main contention before the state reviewing courts and this court is that the only

23   way the prosecutor could have learned of the conversation between both him and his attorney

24   regarding the discussion of a 'DNA' report was from the attorney whom informed the prosecutor

25   of the conversation."  Traverse at 4.  Petitioner states that his "direct appeal was based on

26   Attorney Brace's 'breach of contract.'"  Dckt. No. 1 at 16.

13

1    **C. Analysis**

2         The California Court of Appeal concluded, based on an analysis of state law, that

3    petitioner waived the attorney-client privilege when he testified that Brace did not tell him about

4    the DNA test results.  As explained above, a federal writ of habeas corpus is not available for

5    alleged error in the interpretation or application of state law.  *Wilson,* 131 S. Ct. at 16.  This

6    Court is bound by the Court of Appeal's interpretation of California law.  *Aponte v. Gomez*, 993

7    F.2d 705, 707 (9th Cir. 1993).  Accordingly, any challenge to the Court of Appeal's ruling with

8    respect to petitioner's waiver of the attorney-client privilege is not cognizable in this federal

9    habeas proceeding.

10        Petitioner claims that the trial court erred in allowing Mr. Brace to testify against him at

11   his trial.  The erroneous admission of evidence does not provide a basis for federal habeas relief

12   unless it rendered the trial fundamentally unfair in violation of due process.  *Holley v.*

13   *Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).  Evidence violates due process only if "there

14   are no permissible inferences the jury may draw from the evidence."  *Jammal v. Van de Kamp*,

15   926 F.2d 918, 920 (9th Cir. 1991).  A writ of habeas corpus will be granted for an erroneous

16   admission of evidence "only where the 'testimony is almost entirely unreliable and . . . the

17   factfinder and the adversary system will not be competent to uncover, recognize, and take due

18   account of its shortcomings.'"  *Mancuso v. Olivarez*, 292 F.3d 939, 956 (9th Cir. 2002) (quoting

19   *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983)).  Even then, as the Ninth Circuit has observed:

20             The Supreme Court has made very few rulings regarding the
              admission of evidence as a violation of due process.  Although the
21            Court has been clear that a writ should be issued when
              constitutional errors have rendered the trial fundamentally unfair
22            (citation omitted), it has not yet made a clear ruling that admission
              of irrelevant or overtly prejudicial evidence constitutes a due
23            process violation sufficient to warrant issuance of the writ.

24   *Holley*, 568 F.3d at 1101.  Therefore, "under AEDPA, even clearly erroneous admissions of

25   evidence that render a trial fundamentally unfair may not permit the grant of federal habeas

26   corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme

14

1   Court."  *Id.*  According to these authorities, the state court's rejection of petitioner's due process

2   claim here does not support habeas relief under AEDPA because the admission of attorney

3   Brace's testimony did not violate any clearly established federal law.  *Id.*  Petitioner has not cited

4   any federal case holding that the Sixth or Fourteenth Amendments are violated when an attorney

5   testifies to a conversation between himself and his client after the client has waived the attorney-

6   client privilege with respect to that conversation.  *Cf. Bittaker v. Woodford*, 331 F.3d 715, 724

7   n.7 (9th Cir. 2003) ("We need not decide whether the attorney-client privilege has a

8   constitutional dimension in the criminal context; we note only that doing away with the privilege

9   in all criminal cases would raise a nontrivial question whether defendants would still be getting

10  effective assistance").

11         This court also concludes that any error by the trial court in admitting attorney Brace's

12  testimony into evidence was harmless.  In *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007), the United

13  States Supreme Court clarified that the AEDPA did not replace the traditional test for prejudice

14  on collateral review established in *Brecht v. Abrahamson*, 507 U.S. 619 (1993).[7]  After *Fry*, "in

15  § 2254 proceedings a federal court must assess the prejudicial impact of constitutional error in a

16  state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*

17  507 U.S. 619, whether or not the state appellate court recognized the error and reviewed it for

18  harmlessness . . . ."  *Id.*  Here, A.F. consistently testified that petitioner raped her and she denied

19  that she allowed petitioner to touch her breasts.  On the other hand, petitioner made inconsistent

20  statements with regard to whether he touched A.F., and petitioner's explanation as to why his

21  saliva was found on A.F.'s breasts was, as stated by the California Court of Appeal, absurd on its

22  face.  Under these circumstances, the erroneous admission of evidence that Brace told petitioner

23  about the DNA test results could not have had a substantial and injurious effect on the verdict.

24

25         [7]  On collateral review of a state court criminal judgment under 28 U.S.C. § 2254, an
    error is harmless unless it had "a substantial and injurious effect or influence in determining the
26  jury's verdict."  *Brecht*, 507 U.S. at 631.

1   In short, as that state court concluded, petitioner damaged his own credibility; the addition of

2   Brace's testimony could not have had any substantial effect on the verdict.[8]

3        Petitioner has also failed to demonstrate that he received ineffective assistance of trial

4   counsel because of counsel's failure to prevent Danny Brace from testifying.  In order to prevail

5   on an ineffective assistance of counsel claim, a defendant must show that counsel's performance

6   was deficient and that this deficient performance prejudiced the defendant.  *Strickland v.*

7   *Washington*, 466 U.S. 668, 687 (1984).  Prejudice is found where "there is a reasonable

8   probability that, but for counsel's unprofessional errors, the result of the proceeding would have

9   been different."  *Id.* at 694.  Here, as explained above, the admission into evidence of Mr.

10  Brace's testimony was harmless.  Accordingly, there is no reasonable probability that, but for

11  trial counsel's failure to object to that testimony, the result of the proceeding would have been

12  different.  Petitioner has therefore failed to demonstrate prejudice with respect to his claim of

13  ineffective assistance of trial counsel.

14  ////

15  ////

16

17        [8]   Petitioner has provided no evidence, other than mere speculation, that attorney Brace
    told the prosecutor prior to trial that he had informed petitioner about the DNA results.
18  Accordingly, this court cannot make a finding that any such conversation ever took place, and if
    so, the context and reasons for it.  In any event, petitioner, and not attorney Brace, was the holder
19  of the attorney-client privilege and was therefore the only person who could assert or waive it.
    Mr. Brace could not waive the privilege, even by talking to the prosecutor, because he did not
20  hold the privilege.  The only relevant question with respect to petitioner's claims is whether
    petitioner himself waived the attorney-client privilege during his trial testimony.  Attorney
21  Brace's actions, whatever they were, may or may not have violated rules of professional ethics
    but they do not rise to the level of a federal constitutional violation under the circumstances of
22  this case.  Nor is there any evidence that the prosecutor improperly violated petitioner's right to
    confidential communications with his attorney by speaking with Brace about the DNA results.
23  Accordingly, to the extent that petitioner's allegations give rise to such a claim, he is not entitled
    to relief.  *Cf. Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985) ("[A]lthough] the
24  attorney-client privilege is merely a rule of evidence . . ., government interference with the
    confidential relationship between a defendant and his counsel may implicate Sixth Amendment
25  rights.");  *United States v. Castor*, 937 F.2d 293, 297 (7th Cir. 1991) ("Where the Sixth
    Amendment right to attorney-client confidentiality exists, prosecutorial violation of that
26  privilege might lead to reversal of a resulting conviction if the defendant could show prejudice.")

**III. Conclusion**

      For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

      These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  April 9, 2012.

                               EDMUND F. BRENNAN
                               UNITED STATES MAGISTRATE JUDGE